Filed 10/2/25  P. v. Miles CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERIC MILES,<br><br>Defendant and Appellant. | F088260<br><br>(Super. Ct. No. BF190049A)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  David Wolf, Judge.

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney, Amanda D. Cary, Kari Mueller and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Franson, Acting P. J., Peña, J. and Ellison,[†] J.

[†]Retired judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

In January 2023, defendant Eric Miles pleaded no contest to willfully and unlawfully engaging in reckless driving on a highway, causing injuries listed in Vehicle Code section 23105, subdivision (a) (count 1) and being the driver of a vehicle involved in an accident resulting in death or permanent serious injury in violation of Vehicle Code section 20001, subd. (b)(2) (count 2), and he admitted an enhancement allegation that he personally inflicted great bodily injury during the commission of count 1 (Pen. Code, § 12022.7, subd. (a)).  Pursuant to the negotiated plea agreement, defendant was sentenced to an aggregate term of five years four months, comprising 16 months (the low term) for count 1, plus three years for the Penal Code section 12022.7 great bodily injury enhancement, and one year for count 2 (one third the middle term of three years).  In April 2024, defendant filed a pro se motion for sentence modification, asking the court to strike the personal infliction of great bodily injury enhancement under amended Penal Code section 1385.  The trial court denied defendant's request with prejudice, concluding "[t]here are no grounds."

Defendant appeals from the denial of his request for recall and resentencing pursuant to Penal Code section 1172.1, as amended by Assembly Bill No. 600 (2023–2024 Reg. Sess.).  He argues there were grounds to strike the great bodily injury enhancement because it was not attached to a substantive offense; that is, a violation of Vehicle Code section 23105 is not a substantive offense; mitigating circumstances applied in favor of dismissing the enhancement; and the enhancement punished defendant twice for injuries to the victim.  The People contend the order appealed from is not appealable.  They further assert newly passed Penal Code section 1171 does not affect this analysis.

We conclude the order appealed from is not an appealable order and, accordingly, dismiss the appeal.

2.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2022, defendant was charged with willfully and unlawfully engaging in reckless driving on a highway, which caused injuries listed in Vehicle Code section 23105, subdivision (b) (count 1; Veh. Code, § 23105, subd. (a)) and it was alleged that in the attempted commission of the offense, he personally inflicted great bodily injury upon Nereida Reyes and Christopher Reyes (Pen. Code, § 12022.7, subd. (a)) and that he personally inflicted great bodily injury upon Christopher Reyes, which caused the victim to become comatose due to brain injury or to suffer paralysis of a permanent nature (Pen. Code, § 12022.7, subd. (b)).  Defendant was also charged with driving a vehicle involved in an accident resulting in death or permanent serious injury to another person, Christopher Reyes (count 2; Veh. Code, § 20001, subd. (b)(2)) with allegations he personally inflicted great bodily injury upon Nereida Reyes and Christopher Reyes (Pen. Code, § 12022.7, subd. (a)) and that he personally inflicted great bodily injury upon Christopher Reyes, which caused the victim to become comatose due to brain injury or to suffer paralysis of a permanent nature (Pen. Code, § 12022.7, subd. (b)).  Multiple aggravating factors were alleged pursuant to California Rules of Court, rule 4.421 as to counts 1 and 2.  Defendant was also charged with misdemeanor willfully and unlawfully driving a motor vehicle with a suspended or revoked license (Veh. Code, § 14601.2, subd. (a)).

A preliminary hearing was held on November 8, 2022, and the following evidence was presented.  Officer Felipe Maduena testified he was going to work on May 3, 2022, when he came upon a traffic collision.  A white Jeep was facing southbound on the curb and there were multiple people around it.  Officer Maduena stopped, got out, and approached the Jeep.  He observed a male subject lying on the ground behind the driver's side tire outside of the Jeep and a female in the passenger seat of the Jeep who was later identified as Nereida Reyes.  The male who was on the ground was shirtless and had no pants on.  He was facedown, bleeding from the head, and unresponsive.  Officer

Maduena could not feel a pulse and the male was not breathing; he appeared to be deceased. The female in the front seat was conscious. She was bleeding and crying in pain. Officer Maduena approached a dark SUV with major front end damage located east of the Jeep; no one was inside.

Officer Anthony Flores arrived at the scene and observed two vehicles with major damage. A witness, Jerrett Williams, told Flores he heard a loud crash and saw the black vehicle, a Chevy Equinox, spinning out of control. Williams reported seeing someone get out of the Equinox and flee. Flores also interviewed William Velasquez who reported he was in his residence when he heard the crash and, when he came out, he observed a Black male in a black shirt and black gym shorts who was in his 30's, five feet ten inches tall, 180 pounds, rummaging through the vehicle and then fleeing.

Officer Jordan Hokit also responded to the scene of the accident and interviewed witnesses. An individual named Skyler Stalheim reported she was merging in traffic and looked back over her shoulder at 8:45 p.m. When she looked forward, she saw the two vehicles that were involved in the crash; they had just collided. Another witness, Alexis Soltero, reported she heard the collision and responded to it at approximately 6:48 p.m. She approached the black Chevy Equinox SUV and saw a subject she described as a Black male, 26 to 27 years old, five feet ten inches tall, 200 pounds, and wearing a black shirt and black shorts standing by the open driver's side door. She asked him if anyone else was in the vehicle and he said no. She then saw the male remove items from the backseat and flee southbound. Officer Hokit also responded to Kern Medical Center where he spoke with a doctor regarding Nereida Reyes's injuries. Hokit learned Reyes had sustained a broken jaw and was in critical condition; additional testing was being conducted. Reyes later reported having suffered fractured vertebrae and a brain bleed in addition to a fractured jaw.

Marilyn Reyes also heard the collision and went out to render aid and discovered her cousin, Nereida Reyes, was involved in the accident. She saw a Black male by the

4.

driver's side of the SUV and he appeared to be distraught and saying, "oh my God." Marilyn Reyes noticed he appeared to be impaired; his eyes were bloodshot and watery, he was slurring his words, and she smelled the odor of an alcoholic beverage. She instructed the male to sit on the curb and then she went over to the Jeep. Marilyn Reyes later positively identified the defendant in a photographic lineup as the individual who was standing outside of the black SUV.

A report downloaded from the airbag control module of the black Equinox showed the Equinox was traveling at a speed of 79 miles per hour five seconds prior to the collision. It was traveling 76 miles per hour 3.5 seconds before the collision and every second thereafter leading up to the collision. A report downloaded from the airbag control module of the white Jeep showed the Jeep was traveling 14 or 15 miles per hour and slowing to about 12 miles per hour five seconds prior to the collision. The Jeep began to make a left turn approximately three seconds prior to impact. The Jeep's brakes were engaged approximately two-tenths of a second prior to impact and then immediately deactivated, followed by one hundred percent throttle for the final second or so into impact.

In January 2023, defendant pleaded nolo contendere to counts 1 and 2 and admitted the allegation he personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)) during the commission of count 1 in exchange for a sentence of five years four months—the low term of 16 months on count 1, plus three years for the great bodily injury enhancement and one year for count 2 (one-third the middle term). The remaining charges were dismissed.[1] He was sentenced pursuant to the negotiated disposition on February 7, 2023.

---

[1]As part of the plea agreement, defendant also pleaded nolo contendere to a violation of Vehicle Code sections 23152, subdivision (b)/23550.5 in a separate case (case No. BF191737A) for a term of three years to run concurrently to the sentence in this case (case No. BF190049A).

In April 2024, defendant submitted a "Motion For Sentence Modification" asking the court to reduce his sentence pursuant to Penal Code section 1385 and Senate Bill No. 483. He asserted his motion was "predicated on the following grounds": "The enhancement for great bodily injury constitute duel [*sic*] use of fact in violation of Penal Code section 654" and "[t]he guilty plea did not include any waiver of the benefits of new laws according to Assembly Bill 1618." He also filed a request for the court to take judicial notice of an excerpt from the preliminary hearing.

The court held a proceeding on April 30, 2024, during which it stated it had a "pro per motion," "the inmate wants to strike the GBI." The court found "[t]here are no grounds. This motion is denied with prejudice."[2]

## DISCUSSION

Defendant appeals from the court's denial of his motion for sentence modification. He contends the court's order denying him relief affects his substantial rights and the court erred in denying his request for relief such that the matter must be reversed and remanded. However, we conclude the order appealed from is not appealable; thus, the appeal must be dismissed.

## I. Applicable Law

Where, as here, execution of sentence has commenced and the judgment is final, the trial court is generally "deprived of jurisdiction to resentence" a criminal defendant. (*People v. Karaman* (1992) 4 Cal.4th 335, 344, citing *Dix v. Superior Court* (1991) 53 Cal.3d 442, 455; accord, *People v. Hernandez* (2019) 34 Cal.App.5th 323, 326.) To obtain resentencing on a final judgment, a defendant generally must file a petition for writ of habeas corpus (see *People v. Picklesimer* (2010) 48 Cal.4th 330, 339) or proceed by way of a special statutory procedure (e.g., Pen. Code, §§ 1170.18, 1170.91, 1172.1,

---

[2]The minute order states the motion was denied without prejudice.

6.

1172.2, 1172.6, 1172.7, 1172.75).  (*People v. Hernandez* (2024) 103 Cal.App.5th 1111, 1118.)  (Undesignated statutory references are to the Penal Code.)

Section 1172.1 (former § 1170, subd. (d)) provides an exception to the general rule that a trial court loses jurisdiction once execution of sentence has begun by authorizing a recall and resentencing procedure that may be invoked when, for example, the Secretary of the Department of Corrections and Rehabilitation recommends resentencing. (§ 1172.1, subd. (a)(1); *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082.)  Assembly Bill No. 600 amended section 1172.1 to allow a court to now resentence a defendant "on its own motion" when "applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law."  (§ 1172.1, subd. (a)(1), as amended by Stats. 2023, ch. 446, § 2.)  Accordingly, effective January 1, 2024, section 1172.1, subdivision (a)(1) provides the court may, "*on its own motion*, … *at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law*, … recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence."  (Italics added.)

Notably, section 1172.1, subdivision (c) expressly states, "A defendant is not entitled to file a petition seeking relief from the court under this section."  Additionally: "If a defendant requests consideration for relief under this section, the court is not required to respond."  (*Ibid.*)

## II.    Analysis

Defendant appeals from the denial of his request for recall and resentencing pursuant to section 1172.1, as amended by Assembly Bill No. 600, asserting the court misapprehended its sentencing discretion under the resentencing statute.  He asserts the court's "perfunctory 'no grounds' statement" contravenes section 1172.1, subdivision

(a)(7). He also argues it is possible the trial court believed the plea bargain automatically meant the court could not resentence him. He asserts that there were grounds to strike the great bodily injury enhancement because it unlawfully attached to a sentencing provision, a violation of Vehicle Code section 23105, rather than a substantive offense. He also argues mitigating circumstances applied in favor of dismissing the enhancement, and the enhancement punished him twice for injuries to the victim in violation of Penal Code section 654. The People contend the order appealed from is not appealable. They further assert section 1171 does not affect this analysis because section 1172.1, subdivision (c) provides a more specific rule for resentencing requests initiated by a defendant and, thus, it prevails. On reply, defendant acknowledges that "[t]he weight of authority now concludes that orders denying pro per section 1172.1 petitions are not appealable," but he argues the circumstances of his case are distinct and make the order appealable. Specifically, he contends the order is appealable because the wording of the court's order reflects that it made an "on-the-merits ruling." He contends, "there would be no need for the trial court to deny [his] motion 'with prejudice' if the court was actually exercising its power to not respond." He also contends the order is appealable in that section 1171 clarifies the Legislature's intent and it does not conflict with section 1172.1. Alternatively, defendant argues if we conclude the order appealed from is not appealable, we should treat this appeal as a petition for writ of habeas corpus, asserting in part that "considerations of judicial economy and efficiency favor this remedy" and his sentence "was unauthorized." He raises the same arguments in a supplemental brief. In a supplemental brief, the People assert defendant "has not shown that the superior court had discretionary jurisdiction to consider his request for resentencing under section 1172.1," noting Senate Bill No. 81 (2021–2022 Reg. Sess.) went into effect more than a year before defendant was sentenced pursuant to a negotiated plea agreement. They also disagree that the "words used" by the superior court or "recently enacted section 1171" renders the court's order denying defendant's request for resentencing under section

8.

1172.1 appealable. They contend "[e]ven if the superior court's denial order is deemed an 'on-the-merits ruling,' [defendant's] substantial rights could not have been affected" because he was not entitled to file a petition for relief or to receive a ruling thereon. They also assert it is not appropriate to treat the current appeal as a petition for writ of habeas corpus. They argue defendant is not unlawfully imprisoned or restrained and there is no indication the superior court wrongly believed it lacked authority to resentence under section 1172.1. In a supplemental reply brief, defendant argues the court had authority to act on its own motion under section 1172.1, asserting "[s]ection 1385 is new statutory authority." He argues sections 1172.1, subdivision (a)(3)(A) and (B), and 1171 are also new statutory authority that "confirms a defendant may be resentenced under the new ameliorative sentencing statutes even when originally sentenced pursuant to a plea bargain." We agree with the People that the appeal must be dismissed because the order appealed from is not appealable.

"'"It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute." [Citations.]'" (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 598.) Section 1172.1 does not address whether a trial court's denial of a defendant's request for recall and resentencing under the statute is appealable. However, section 1237, subdivision (b) "provides that a defendant may appeal from 'any order made after judgment, affecting the substantial rights of the party.'" (*Teal*, *supra*, at p. 598.)

Here, we cannot conclude the court's order denying defendant's postjudgment request that it modify defendant's sentence affects defendant's substantial rights such that it constitutes an appealable order. Section 1172.1, subdivision (c) expressly provides that the trial court may choose not to respond to a defendant's invitation for the court to initiate recall and resentencing proceedings on its own motion pursuant to section 1172.1, subdivision (a) as amended by Assembly Bill No. 600. (§ 1172.1, subd. (c).) By stating a court may decline to respond to a defendant's request for relief under the statute, the

9.

language of section 1172.1, subdivision (c) establishes there is no affirmative obligation on a trial court to consider a defendant's request for relief or initiate recall and resentencing proceedings in response thereto. And, if a court has no duty to respond to— let alone grant—a defendant's request for relief, it follows that a defendant has no *right* to the initiation of recall and resentencing proceedings. Thus, where, as here, the court denies such relief, it cannot be said that the order affects the defendant's substantial rights as would be required for such a postjudgment order to be appealable. (§ 1237, subd. (b).)

The specific language used by the court in denying defendant's request for relief, including its statement the motion was denied with prejudice, does not change our conclusion that its order is not appealable. Here, the court's denial of defendant's request for sentence modification does not reflect it initiated recall and resentencing proceedings on its own motion. To the contrary, the record reflects the court denied defendant's request that it do so.[3] (See *People v. Faustinos*, *supra*, 109 Cal.App.5th at p. 696 ["A defendant is not entitled to file a section 1172.1 petition nor to receive a ruling if he

---

[3]It bears worth noting that a court sometimes can respond to a defendant's unauthorized petition under section 1172.1 "by noting, correctly that it lacks jurisdiction to act on its own section 1172.1 motion. Beyond 120 days from the defendant's commitment, a trial court may act only if 'the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law.' (§ 1172.1, subd. (a)(1).) If no applicable laws have changed, the court may not act on its own motion." (*People v. Faustinos* (2025) 109 Cal.App.5th 687, 697.) And here, "in fact, the trial court may have lacked jurisdiction to act on its own motion." (*Ibid.*) Defendant was convicted and sentenced pursuant to the negotiated plea agreement in 2023. Senate Bill No. 81, which amended section 1385 and which defendant cites as a basis for relief, became effective January 1, 2022, and, thus, was in effect when defendant was convicted and sentenced in this case. (See Stats. 2021, ch. 721, § 1.) Consequently, it cannot be said that Senate Bill No. 81 is a subsequent change in the applicable sentencing laws from the time of original sentencing. (See § 1172.1, subd. (a)(1).) Defendant also relies upon *People v. Harbert* (2009) 170 Cal.App.4th 42 to argue the great bodily injury enhancement should have been stayed pursuant to section 654, and *People v. Escarcega* (2019) 32 Cal.App.5th 362 to argue the great bodily injury enhancement was improperly attached to a sentencing provision, Vehicle Code section 23105, as opposed to a substantive offense. Nevertheless, *Harbert* and *Escarcega* issued years before defendant's conviction and sentencing, and they also do not constitute subsequent changes in the applicable sentencing laws from the time of original sentencing.

nevertheless files one. It follows that an appeal from an order acting on his petition (whether couched as a denial, dismissal, or any other statement that the court is not acting) does not affect the defendant's substantial rights"].) Indeed, if the court had granted recall and resentencing on its own motion, it would have been required to hold a hearing where the parties had an opportunity to address the basis for the intended denial or rejection, consider postconviction factors, and state on the record its reasons for its decision to grant or deny recall and resentencing; it did not do so. (See § 1172.1, subd. (a).) And because defendant has no right to relief (i.e., the defendant has no right to the court's initiation of recall and resentencing proceedings on its own motion pursuant to § 1172.1), the court's order denying such relief cannot be said to affect the defendant's substantial rights.

Section 1171 does not affect our conclusion. Assembly Bill No. 2483 (2023–2024 Reg. Sess.) enacted section 1171, effective January 1, 2025, which sets forth various procedures under subdivision (c) that apply to all postconviction proceedings to modify a sentence or conviction under ameliorative statutes, including section 1172.1. (§ 1171, subds. (a) & (c); see Stats. 2024, ch. 964, § 2.) Section 1171 provides that, upon receiving "a request to begin a postconviction proceeding *that is authorized in law*," the court shall consider appointment of counsel for the defendant. (§ 1171, subd. (c)(1), italics added.) It also requires a court to "state on the record the reasons for its decision to grant or deny the initial request to begin a postconviction proceeding" and provide notice of that decision. (*Id.*, subd. (c)(4).) And, after ruling on a request, "the court shall advise the defendant of their right to appeal and the necessary steps and time for taking an appeal." (*Id.*, subd. (c)(5).) Section 1171 expressly states that the procedures set forth in subdivision (c) do not apply where "there is a conflict with a more specific rule established in statute, in which case the more specific statute shall apply." (§ 1171, subd. (c).)

11.

At least one court has held that newly enacted section 1171 does not apply to defendant-initiated requests for resentencing under section 1172.1. (See *People v. Brinson* (2025) 112 Cal.App.5th 1040, 1049 [concluding "section 1172.1, subdivision (c), not section 1171, subdivision (c), applies to defendant-initiated requests for recall and resentencing"].) *Brinson* concluded, as the more specific statute, section 1172.1, subdivision (c), not section 1171, subdivision (c), applies, reasoning, "the plain language of section 1171, subdivision (c) makes clear that it does not apply if it conflicts 'with a more specific rule established in statute, in which case the more specific statute shall apply.' (§ 1171, subd. (c).) The language of section 1171, subdivision (c) requiring a trial court to take any action in response to a request for recall and resentencing clearly conflicts with the more specific rule established in section 1172.1, which expressly states that 'the trial court is not required to respond' to a defendant-initiated request under that section." (*Brinson*, *supra*, at p. 1048.) *Brinson* further noted section 1171, subdivision (c)'s language, on its face, "applies only to those requests that are 'authorized in law' (§ 1171, subd. (c)(1)), which a defendant-initiated section 1172.1 petition is not." (*Brinson*, at p. 1048.) Additionally, *Brinson* held that applying the procedural requirements of section 1171, subdivision (c) "'to a defendant's request for recall and resentencing [under section 1172.1] would directly contradict the clear statement in section 1172.1, subdivision (c) that, "[i]f a defendant requests consideration for relief under this section, the court is not required to respond."'" (*Brinson*, at p. 1048.) We agree with *Brinson* and also conclude that "a defendant who requests recall and resentencing under section 1172.1—even after section 1171 became effective—does not have a substantial right at stake, and the trial court's decision on that request is not appealable." (*Brinson*, *supra*, at p. 1049.)

We also decline defendant's request that we construe the instant appeal as for a writ of habeas corpus and grant the defendant relief. If defendant wishes to pursue

habeas corpus relief, he must do so in accordance with the procedures governing such petitions.  We express no opinion as to the merits of such a petition.

## DISPOSITION

The appeal is dismissed.